ROBERT D. MILLER, an Infant, by ELWOOD R. MILLER, His Guardian ad Litem, Appellant, *v.* BOARD OF EDUCATION, UNION FREE SCHOOL, DISTRICT No. 1, OF THE TOWN OF ALBION, et al., Respondents, et al., Defendants.

ELWOOD R. MILLER, Appellant, *v.* BOARD OF EDUCATION, UNION FREE SCHOOL, DISTRICT No. 1, OF THE TOWN OF ALBION, et al., Respondents, et al., Defendants.

Argued April 13, 1943; decided July 20, 1943.

*William J. Darch* and *George W. Watson* for appellants. A verdict having been directed in favor of the defendant Board of Education, the plaintiffs, on this appeal, are entitled to the benefit of every fact the jury could have found from the evidence and to every legitimate inference that could have been drawn from all the facts. (*LaRose* v. *Connelly,* 219 App. Div. 181.) The questions of negligence on the part of the Board of Education were questions of fact for the jury and the trial court erred in directing a verdict. (*Carlisle* v. *Norris,* 215 N. Y. 400; *McConnell* v. *Hellwig,* 190 App. Div. 244; *Vieser* v. *Bellows,* 209 App. Div. 540; *Lessin* v. *Board of Education,* 247 N. Y. 503; *Herman* v. *Board of Education,* 234 N. Y. 196; *Garber* v. *Central School Dist. No. 1,* 251 App. Div. 214; *Collentine* v. *City of New York,* 279 N. Y. 119; *Parnell* v. *Holland Furnace Co.,* 234 App. Div. 567, 260 N. Y. 604; *Boylhart* v. *DiMarco & Reimann, Inc.,* 270 N. Y. 217; *Pinghero* v. *Queens County Sav. Bank,* 260 App. Div. 667; *Martin* v. *Herzog,* 228 N. Y. 164.) The verdict in favor of the defendant Pratt, was contrary to the evidence and the weight thereof, and should have been set aside. (*Hoose* v. *Drumm,* 281 N. Y. 54.)

*George J. Nier* for respondents. The order of the trial court, directing a verdict in favor of the defendant Board of Education, was proper. (*Herman* v. *Bd. of Education,* 234 N. Y. 196; *Hoose* v. *Drumm,* 281 N. Y. 54; *Peterson* v. *City of New York,* 267 N. Y. 204.) The verdict that defendant Pratt was free from negligence, is sustained by the evidence. (*Thompson* v. *Board of Education,* 280 N. Y. 92.)

Conway, J. These actions were brought by the infant plaintiff (hereinafter called plaintiff) and his father to recover damages for personal injuries sustained when the plaintiff fell while playing on a fire escape in a school building. We are concerned here with two defendants: the Board of Education, Union Free School, District No. 1 of Town of Albion, and Carrie P. Pratt.

The infant plaintiff is six years of age. At noon recess he and his older sister, together with other children, ate their lunch in a room in the school building. After the lunch, Carrie P. Pratt (teacher in charge of the school), told the children, who numbered about twenty-five, to go outside to play. On the playground there was a fire escape, enclosed in wire mesh, the door of which was open by reason of its defective condition. That was in violation of Education Law sections 453 and 868, subdivisions 3 and 9. The infant plaintiff entered upon the fire escape and sustained serious injuries by reason of a fall thereon.

When the infant plaintiff and the other children were sent out to play, no teacher was sent with them. The defendant Pratt had been instructed by the Superintendent of Schools to supervise the noon play of the children and that she did by watching them from windows, in a hall, which gave a view of a portion of the playground. There were windows through which one could see that portion of the playground where the defective fire escape door was located. Those windows, however, were in a grade room which was locked. There was thus no supervision of the children at all when they were at the place where the accident occurred.

The court submitted certain questions to the jury. One of them was: " Was the Board of Education negligent in the repair of the door? " The court charged the jury that in order to answer that question in the affirmative it would have to find: (1) that the door was out of repair, (2) that the lack of repair existed long enough so that the Board had notice or should have known of the condition, (3) that by reason of the door being open children were attracted by the fire escape as a place to play, (4) that it was a dangerous place for them to play and (5) that such an accident as happened to plaintiff was one which reasonably prudent members of the Board would anticipate as likely to happen. The jury thereupon answered the question, namely, " Was the Board of Education negligent in the repair of the door? " in the affirmative.

The court also submitted the question " Was the Board of Education negligent in failing to provide proper supervision? " and then charged that in order to answer that question in the affirmative the jury would have to find (a) that the door had

been allowed to be open frequently over a long enough period so that the Board ought to have known of it, (b) that the Board knew children were playing on that fire escape, (c) that it was a dangerous place for children to play and (d) that such an accident was likely to happen if children played there. The court then charged that if the jury found all of those facts it was for it to say whether or not the supervision which the Board did attempt was adequate. The jury answered the question thus submitted in the affirmative.

At the same time the jury answered another question, " Was the defendant, Carrie P. Pratt, negligent? " in the negative.

Thereafter the trial court granted the motion of the Board to set aside the findings of the jury charging it with negligence on the ground that there was no evidence to sustain those findings and granted the motion of the Board " for a general verdict by direction of the Court for no cause of action, upon which decision was reserved." The trial court also denied plaintiff's motion " to set aside the finding of the jury absolving the defendant Carrie P. Pratt of negligence " and granted the motion of defendant Pratt " for a general verdict of no cause of action, in accord with the jury's answer " to the question: " Was the defendant, Carrie P. Pratt, negligent? ". It should be added that the jury in answer to another question submitted to it, found that the infant was not negligent.

There was evidence from which a jury could have found that the Board had been negligent in permitting the door of the fire escape to remain in a defective and dangerous condition, after notice, and that the defective and dangerous condition was the proximate cause of the accident. (Education Law, §§ 453, 868, subds. 3, 9; *Lessin* v. *Board of Education,* 247 N. Y. 503; *Popow* v. *Central School District,* 251 App. Div. 906, affd. 277 N. Y. 538.)

" Where the defendant has by his conduct set in motion forces which would not have resulted in harm to another but for the failure of a third person to act or perform some duty which the law imposes upon him the failure on the part of such third person to perform the act does not break the causal relation between the defendant's conduct and the plaintiff's damage." (Harper on Torts, § 115, p. 264. To the same effect, American Law Institute, Restatement of the Law of Torts [Negligence],

§§ 431, 432, 433, 452.) See, also, *Carlock* v. *Westchester Lighting Co.* (268 N. Y. 345) and American Law Institute, Restatement of the Law of Torts (Negligence), section 439.

In the instant case the failure of the Board to repair the door would not have resulted in harm to plaintiff had Carrie P. Pratt provided adequate or even some supervision of his play. On the other hand, if the door had been in good repair and locked, plaintiff could not have entered upon and ascended the fire escape and fallen. Under the rule above stated, the Board cannot be relieved of liability for its negligence because defendant Pratt failed to perform her duty. There is a chain of causation between plaintiff's injury and the negligence of defendant Board. The fire escape, even though in good repair, was a dangerous place for children to play. If the door had been locked, plaintiff could not have entered. The jury found that defendant Board should have foreseen that if children played on the fire escape they might be injured and that it should also have foreseen, that if the door were not locked, children would go on the fire escape.

While the language of the statutes (Education Law, § 310, subd. 15; § 868, subd. 9) is broad in scope it undoubtedly refers to those activities maintained by a Board of Education in its conduct of schools under its control and especially to *supervision of children during school hours.* The duty is to " employ such persons as may be necessary to supervise, organize, conduct and maintain athletic, playground and social center activities, or for any one or more of such purposes." (§ 310, subd. 15.) The Board is also given power to prescribe regulations for the discipline of the schools and all other educational, social or recreational activities. (§ 868, subd. 9.) The rule was correctly stated by the Appellate Division in *Graff* v. *Board of Education* (258 App. Div. 813, affd. 283 N. Y. 574): " While the defendant is charged with the duty of providing for adequate supervision of activities within the school yard (citing the statute and cases) its obligation was fulfilled when it provided for adequate supervision in the person of one or more competent instructors." In other words a Board of Education is obligated to supervise activities of children when the Board has care and charge of the children during school hours. That duty is fulfilled when it provides for adequate supervision

in the person of one or more competent teachers. It is not responsible for the individual negligence of one of the teachers except as provided in Education Law, section 569-a. (*Graff* v. *Board of Education, supra.*) In the instant case the Board was not obligated to keep these children upon school premises during the luncheon hour. It could have required the parents to call for the children and to take charge of them during that period. What the Board could not do under the statutes was to undertake the care and control of the children during the luncheon period and then, after they had lunched, turn them out upon school property upon which there existed a known dangerous and defective condition and provide no supervision at all for them although they were in the school yard or playground, and it was during school hours. If the Board had given the required supervision so that a teacher or teachers were among the children, the dangerous condition of the school property insofar as it affected the pupils so protected by supervision might well have ceased to exist. The statutory duty must be interpreted in accord with the intention of the Legislature which was clearly that the Board of Education should supervise a playground on school property during school hours and provide a proper place to play for school children when it was necessary for them to go out upon school property during school hours. As we have said the children could have been turned back to their parents during the luncheon period. On the contrary the Board saw fit to continue its control over the children during that period. It was not necessary to put them out upon a portion of the school premises where danger lurked, whether we call that place a playground or something else. It was school property. The Board could have permitted these children to remain indoors in a classroom or an auditorium or to play indoors.

The authorities in this State are in accord with the foregoing. In the case of *Popow* v. *Central School District* (*supra*), there was the case of a dangerous condition and no supervision. In *Hoose* v. *Drumm* (281 N. Y. 54) we pointed out at page 57 that *there was no dangerous condition upon the school premises.*

There was evidence which required a finding that defendant Carrie P. Pratt failed in her duty of supervision over the infant plaintiff (*Hoose* v. *Drumm,* 281 N. Y. 54, 57), even though the Board would have been obligated to save her harmless from a

judgment against her under Education Law, section 569-a. On the contrary, however, a general verdict was directed in her favor after a finding by the jury to the same effect in answer to one of the questions submitted to it. There was no motion, as was quite natural, for a direction of a verdict in favor of plaintiff against the defendant Pratt on the ground that her negligence was established as a matter of law. The judgment in favor of the defendant Pratt has been affirmed by the Appellate Division. As to that judgment in favor of the defendant Pratt, in view of our limited jurisdiction, and the failure of the plaintiff to move, as indicated, we may not reverse as to her.

The judgments as to the defendant Board of Education should be reversed and a new trial granted, with costs to the appellants to abide the event.

The judgments as to the defendant Pratt should be affirmed, with costs.

RIPPEY, LEWIS and DESMOND, JJ., concur; LEHMAN, Ch. J., and LOUGHRAN, J., dissent and vote to affirm.

Judgment accordingly.