Richard L. Baltimore, Jr., J.
The New Rochelle High *216 School has an automotive shop in which students learn the fundamentals of automotive maintenance and repair under the guidance and supervision of James Steffani, a qualified and competent instructor, whose experience in automotive repairs exceeds 36 years.
As budgetary restrictions allot no funds earmarked for the purchase of cars to be used in the auto shop, the New Rochelle High School relies upon two sources of automobiles: (1) Donated cars, (2) Repairs made free of charge on the cars of three classes of persons: senior citizens, high school employees and students.
Defendant in the original action, Alice Baker, is an employee of the New Rochelle school system, assigned to the New Rochelle High School. By mutual agreement, James Steffani was to permit New Rochelle High School students, enrolled in his class, to perform some work, repair brakes, on an automobile owned by Mrs. Baker’s son. The car was a 1967 American Motors Ambassador, purchased for $125.
On or about October 16, 1975 Mrs. Baker left the car outside the gate surrounding the high school. She testified that both she and her son had driven the automobile at regular speeds and at varying distances throughout the metropolitan area without any apparent automotive difficulties, with the exception of the matter of a brake job.
The board’s witnesses testified that when they attempted to drive the car into the school yard, the car would not start and that it had to be pushed into the auto shop. They also testified the car was in a total state of disrepair and worth nothing more than perhaps salvage value when brought to the high school.
James Steffani personally expended $61.62 from his own funds to cover the cost of parts needed to effect repairs to the brakes and Mrs. Baker paid cash of $35.17 to purchase a new master cylinder.
Mrs. Baker had been attempting unsuccessfully to retrieve the car and on November 7, 1975 removed the automobile from the high school and drove it to the Woodland Service Station.
She testified that she could not drive the car faster than a few miles per hour and when she arrived at the service station she had to crawl out of the car over the front seat through the back seat because the handles had been broken *217 off the inside of the front doors. She stated that prior to taking the car to the high school, she could go out the front door.
Mrs. Baker further testified that on October 31, 1975 at approximately 2:30 p.m., when she called Mr. Steffani for a "progress report”, Mr. Steffani said that there had been a "slight accident”, that one of the students dropped the car off the lift, but there were no damages. Mr. Steffani denies this.
Mrs. Baker then stopped payment on her $61.62 check to Mr. Steffani. Mr. Steffani then sued in Small Claims Court for $61.62 and Mrs. Baker counterclaimed against James Steffani and the Board of Education of the City School District of the City of New Rochelle for damages to the automobile in the sum of $500.
The question of the real party in interest, as the car was actually owned by her son, was disposed of by an on the record stipulation between counsel and is not before the court.
Mrs. Baker’s expert witness, Michael Annunziata, the mechanic at the Woodland Service Station, after examining the automobile on or about the 7th of November, 1975 testified that the rear brakes were not new, the front left caliper was leaking and in need of repair, as were the two rear wheel cylinders, and the transmission was slipping badly. He further testified that the cooling lines were broken and gave his opinion that the car was abused while being repaired in the high school, that a master cylinder was installed in the car, but that the rear wheel lining was badly worn, that the rear wheel cylinder was leaking extensively, that the doors were scored, that no work had been done on the rear brakes, that the wheel had not been disassembled, that the front brakes were worn, but not to the point of danger.
James Steffani testified that the work was done. At the conclusion of the trial, the court ruled from the Bench directing a verdict in favor of James Steffani against Alice Baker for $61.62, which she agreed to pay forthwith.
This decision is therefore directed only to the counterclaim of Alice Baker against Joseph Steffani and the board of education.
Counsel for the board of education properly and vigorously argues that a decision against the board of education will probably jeopardize the automotive program, not only at the New Rochelle High School, but throughout Westchester *218 County. The court is well aware of that strong probability and of the public policy involved.
Counsel for the board argues that "when the equities are balanced, it is indeed apparent that Mrs. Baker’s 'right’ to a risk-free guarantee of gratuitous repairs must take a back seat to the pressing need for these valuable training programs which keep students interested in school and provide them with skills which will serve them well in years to come”.
Both counsel have submitted excellent memoranda of law. The principles enumerated are both valid, although not necessarily dispositive of the issues in this case. The court agrees that a person who trusts his or her automobile to the hands of student-mechanics, cannot expect to nor is entitled to receive the same standards of care as from a professional. The standard of care to which the board of education is held is that of reasonable prudent novice of limited experience and expertise under the guidance of the personnel employed by the board of education to supervise the students. No person who entrusts an automobile to this type of program expects students to work upon or control the work unsupervised.
There is a duty upon the board of education to use ordinary care in the protection of the automobile in its custody. While the students were neither "agents” nor "employees” of the high school, James Steffani, the instructor, was.
The doctrine of respondeat superior is applicable here, not between the students and the board of education, but between James Steffani and the board of education.
The New Jersey and the Kentucky cases cited by the board of education are not determinative of the issue. In Domino v Mercurio (17 AD2d 342, 349) the court held:
"In 1957, the Court of Appeals abolished the last remaining vestige of charitable immunity in Bing v. Thunig (2 N Y 2d 656). The court held that the rule of respondeat superior applied to professional employees of charitable hospitals as well as to administrative employees and that the distinction theretofore made between the two classes of employees should be abrogated.
"The impact of the Bing decision upon the parallel problem with respect to Boards of Education is self-evident. The doctrine of respondeat superior must be held to be applicable to the professional employees of Boards of Education just as it is *219 applicable to the professional employees of charitable institutions.”
The dissenting Judges stated (p 350), "we agree with the general principle of liability of a Board of Education for the negligence of its teachers” and voted to reverse on other grounds.
The court finds as a fact that the automobile had a "slight accident” and that a student or students permitted it to fall from a lift. The court also finds as a fact that the work was not done as stated by the instructor.
It is this negligence and failure of supervision upon which the court is finding the board of education liable. The basis is the fall of the car and the failure to perform work allegedly done. This is improper supervision. The court would hold otherwise if the car had simply been repaired and was not thereby made operable even though persons more experienced than the students could have made it operable.
The standard of care to which the board of education is held is neither that of an insurer, guarantor, nor professional, merely the standard of care to be expected from an ordinary prudent person. A person who entrusts his or her automobile to a student program cannot expect professional nor even necessarily workable standards. They do not envision a car being dropped, nor being advised that certain work was done when in fact that work was not done.
Had the board of education personnel, whether the employee or student under his supervision, kept the car reasonably safe and not permitted it to be damaged by falling off the lift; had they made the repairs alleged, there would be no liability against the board, whether or not the car was made operable.
To such standards is the board of education held. "By such standards, a teacher may be charged only with reasonable care such as a parent of ordinary prudence would exercise under comparable circumstances. Proper supervision depends largely on the circumstances attending the event but so far as the cases indicate, there has been no departure from the usual rules of negligence. For instance, when defective or dangerous equipment or paraphernalia is used, the teacher or board is charged with foreseeability and negligence may be predicated thereon”. (Ohman v Board of Educ., 300 NY 306, 309.)
The placing of a car upon a lift and the raising and *220 lowering of a lift are activities which are sufficiently fraught with danger per se as to require adequate supervision. In the case of an obvious dangerous condition, adequate supervision is a must and failure to provide the same constitutes an act on the part of the board of education for which it can be held liable. (See Miller v Board of Educ., 291 NY 25.)
" 'Where the defendant has by his conduct set in motion forces which would not have resulted in harm to another but for the failure of a third person to act or perform some duty which the law imposes upon him the failure on the part of such third person to perform the act does not break the causal relation between the defendant’s conduct and the plaintiff’s damage.’ ” (Miller v Board of Educ., supra, p 29.)
The court finds in favor of Alice Baker on the counterclaim and against the defendants.
As to the question of damages, the law is that: "the cost of repairs must be less than the diminution in market value due to the injury, and, secondly, that the repairs must never exceed the value of the automobile itself as it was before the injury.” (Gass v Agate Ice Cream, 264 NY 141, 143.) "The measure of damages for injury to property resulting from negligence is the difference in the market value immediately before and immediately after the accident, or the reasonable cost of repairs necessary to restore it to its former condition, whichever is the lesser.” (Johnson v Scholz, 276 App Div 163, 164.)
The top limit in this case is $125 or the cost of the car.
Judgment rendered for Alice Baker on the counterclaim in the sum of $125 against the Board of Education of the City School District of the City of New Rochelle.